IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE           *    MDL Docket No. 2004
                                         4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS       *
                                         Case No.
LIABILITY LITIGATION                *    4:13-cv-238 (Veal)

_____

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Bonnie Sue Veal was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Veal brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Veal also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor seeks summary judgment on all of Veal's claims, contending that they are time-barred under Minnesota law. For the reasons set forth below, Mentor's summary judgment motion (ECF No. 47 in 4:13-cv-238) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.   *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.   *Id.*

## FACTUAL BACKGROUND

Bonnie Sue Veal's urologist, Dr. Bernard Ram, recommended a vaginal sling to treat Veal's incontinence.   Dr. Ram implanted Veal with ObTape on April 22, 2005.   Veal began to experience recurrent incontinence, vaginal bleeding, and vaginal discharge. She returned to Dr. Ram, who prescribed antibiotics.

On May 31, 2006, Veal told her gynecologist, Dr. Thomas Hatchett, that she was experiencing vaginal bleeding.   When he examined Veal, Dr. Hatchett found a small erosion of Veal's ObTape and told Veal what he found.   He recommended a topical estrogen cream to treat the erosion.   Veal continued to experience discharge.   At Veal's follow-up visit on July 3, 2006, Dr. Hatchett again noted that Veal had suffered an erosion of her ObTape.   He discussed her treatment options: either continue with the estrogen cream or have the sling removed.   Dr.

2

Hatchett advised Veal to consider these options and suggested that an additional surgery may not be warranted if Veal was experiencing only a small amount of discharge.  Hatchett Dep. 49:6-50:7, ECF No. 48-11 in 4:13-cv-238.  The parties did not point to any evidence that Veal sought additional treatment for the erosion over the next eleven months.

In late June 2007, Veal presented to the emergency room complaining that she had something hanging out of her vagina. The emergency room physician referred Veal to Dr. Michael Connor, a gynecologist.  Dr. Connor excised a portion of Veal's ObTape and referred Veal to another gynecologist, Dr. Ronald Brock, for follow-up.  Dr. Brock examined Veal and determined that her sling was infected and had eroded; he recommended removal of the ObTape, and he believed that he removed the entire sling.  But in 2010, after Veal continued to experience adverse symptoms, another doctor found additional ObTape and recommended that it be removed.  Veal's third excision procedure took place in February 2010.  Veal asserts that after the excision procedures in 2007, she filed an investigative complaint against Dr. Ram with the Georgia Composite Medical Board.

Veal is a Georgia resident, and all of her ObTape-related medical treatment occurred in Georgia.  Veal asserts claims for strict liability; negligence; breach of express warranty; breach

3

of implied warranty; common law fraud; constructive fraud; and negligent and intentional misrepresentation. Mentor seeks summary judgment on all of Veal's claims, contending that they are time-barred. Veal does not contest summary judgment on her warranty claims, so Mentor is entitled to summary judgment on those claims.

DISCUSSION

On June 14, 2013, Veal served Mentor with a Complaint captioned in the Hennepin County District Court of the State of Minnesota. Mentor removed this action to the United States District Court for the District of Minnesota. The case was later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. The parties agree for purposes of summary judgment that Minnesota law applies to Veal's claims. *See Cline v. Mentor*, No. 4:10-cv-5060, 2013 WL 286276, at *7 (M.D. Ga. Jan. 24, 2013) (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota).

## I.  Veal's Negligence and Strict Liability Claims

Mentor contends that Veal's negligence and strict liability claims are time-barred under Minnesota law. The statute of limitations for a strict liability claim is four years. Minn. Stat. § 541.05 subd. 2 ("[A]ny action based on the strict liability of the defendant and arising from the manufacture,

4

sale, use or consumption of a product shall be commenced within four years."). The statute of limitations for a negligence claim is six years. Minn. Stat. § 541.05 subd. 1(5) (establishing six-year limitation period for personal injury claims not arising in contract or strict liability).

Under Minnesota law, "a claim involving personal injuries allegedly caused by a defective product accrues when two elements are present: '(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product, act, or omission.'" *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992) (quoting *Hildebrandt v. Allied Corp.*, 839 F.2d 396, 398 (8th Cir. 1987)) (applying Minnesota law). Thus, as the Court has concluded on numerous occasions, a plaintiff's product liability cause of action accrues under Minnesota law when the plaintiff learns that she has an injury caused by a product. *Watson v. Mentor Worldwide, LLC*, No. 4:13-cv-27, 2016 WL 1574071, at *2 (M.D. Ga. Apr. 19, 2016) (quoting *Klempka*, 963 F.2d 168, 170 (8th Cir. 1992) ("A plaintiff who is aware of both her injury and the likely cause of her injury is not permitted to circumvent the statute of limitations by waiting for a more serious injury to develop from the same cause.")). For example, in *Klempka*, the plaintiff suffered injuries and was diagnosed with chronic pelvic inflammatory

disease, which her doctor said was caused by the plaintiff's intrauterine device. *Klempka*, 953 F.2d at 169. Several years later, the plaintiff was told that she was infertile and that the intrauterine device caused her infertility. *Id.* Applying Minnesota law, the Eighth Circuit concluded that the plaintiff's cause of action accrued when she first learned that she had an injury (chronic pelvic inflammatory disease) that was caused by the intrauterine device. *Id.* at 170.

Here, Veal contends that she did not learn of a connection between ObTape and her injuries until June 2007, when Veal had her first excision procedure.  But Veal was informed in July 2006 that she had an erosion of her sling.  Her doctor gave her two treatment options to resolve her symptoms: continue with estrogen cream or have the mesh sling removed.  Thus, by July 2006, Veal should have known that she needed treatment for injuries related to an erosion of the ObTape.  In other words, she was aware (or should have been aware) of an injury and its likely cause.  Veal emphasizes that she did not know what the word erosion meant, but that does not mean that she could not have understood that she had an injury related to her ObTape. Moreover, Veal did not point to evidence that she tried to understand what it meant—by asking her doctor, for example.

The parties did not point to any evidence of any treatment Veal pursued between July 2006 and June 2007.  There is also no

evidence that Veal tried to investigate the connection between
ObTape and her injury between July 2006 and June 2007.  The
Court recognizes that the present record suggests that Veal did
not suffer a severe injury related to her ObTape until June
2007, when she sought emergency treatment for an erosion.
Again, the *Klempka* court stated: "A plaintiff who is aware of
both her injury and the likely cause of her injury is not
permitted to circumvent the statute of limitations by waiting
for a more serious injury to develop from the same cause."
*Klempka*, 963 F.2d at 170.  Thus, Veal could not wait for a more
serious injury to trigger the statute of limitations.  Her
claims accrued in July 2006, when she learned that there was a
likely connection between ObTape and some of her injuries.  She
did not file her complaint until nearly seven years later, in
June 2013.

In a brief that appears to have been cut and pasted from
briefs of other plaintiffs in this MDL, Veal seems to argue that
it is not enough that she made (or could have made) a connection
between ObTape and some of her injuries.  Rather, she appears to
argue that she must have been on notice that a *defect* in ObTape
caused her injuries.  The Court has considered this argument on
several occasions and rejected it because, like Veal, the
plaintiffs in those cases "did not point to any Minnesota
authority holding that a plaintiff must be on actual notice that

her specific injuries were caused by a product defect." *See Watson*, 2016 WL 1574071, at *2.   The Court noted that "the precedent establishes that a claim accrues when the plaintiff becomes aware of an injury and a causal connection between the injury and the defendant's product."   *Id.* (citing *Klempka*, 963 F.2d at 170).

Veal's argument is nearly identical to the plaintiff's argument in *Watson* (which was nearly identical to the argument of other plaintiffs in this MDL)—from the language used to the cases cited.   The Court has already considered the argument and the cases.   Veal presented no new arguments or authority.   Like the other plaintiffs in this MDL, Veal relies on *Hildebrandt v. Allied Corp.*, 839 F.2d 396 (8th Cir. 1987), *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004), and *Huggins v. Stryker Corp.*, 932 F. Supp. 2d 972 (D. Minn. 2013).[1]   As the Court previously observed, "*Hildebrandt*, *Tuttle*, and *Huggins* are all distinguishable from" cases like this one, where the plaintiff knew or should have known of a connection between her injuries and a product.   *Watson*, 2016 WL 1574071, at *3.   "In *Hildebrandt*, *Tuttle*, and *Huggins*, the plaintiffs suffered injuries that could have been caused by the defendant's product OR could have been caused by something else, and the courts

---

[1] And like other plaintiffs in this MDL, Veal relies on *Sanchez v. Boston Sci. Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *8–*9 (S.D. W. Va. Jan. 17, 2014).   *Sanchez* was decided under California law, not Minnesota law, and thus has no application here.

concluded that the cause of action did not accrue until the plaintiffs had some objective information suggesting a causal link between the product and the injury." *Id.* "In contrast, here, [Veal] suffered injuries that were connected to an erosion of the ObTape, and [Veal] knew of, strongly suspected, or had enough information to know of a connection between ObTape and at least some of her injuries by the time her doctor" diagnosed her with an erosion of the ObTape and gave her treatment options. *Id.* Veal offered no Minnesota authority to support a departure from the Court's previous interpretation of Minnesota law on this subject.[2]

## II.  Veal's Fraud and Misrepresentation Claims

The statute of limitations for fraud claims is six years. Minn. Stat. § 541.05 subd. 1(6). A fraud cause of action "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." *Id.* But "the facts constituting fraud are deemed to have been discovered

---

[2] Veal did not explicitly argue that the statute of limitations should be tolled by fraudulent concealment.  Veal does assert that Mentor took "extraordinary measures" to conceal problems with ObTape.  Pl.'s Resp. to Def.'s Mot. for Summ. J. 20, ECF No. 48 in 4:13-cv-238.  Even if Veal did assert a fraudulent concealment argument, under Minnesota law, "[a] statute of limitations may be tolled if the cause of action is fraudulently concealed by the defendant." *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992). "To establish fraudulent concealment, a plaintiff must prove there was an affirmative act or statement which concealed a potential cause of action, that the statement was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered by reasonable diligence." *Id.*  Veal did not point to any evidence that some affirmative act or statement by Mentor concealed claims by preventing her from connecting her injury to ObTape.

when, with reasonable diligence, they could and ought to have been discovered." *Veldhuizen v. A.O. Smith Corp.*, 839 F. Supp. 669, 674 (D. Minn. 1993) (quoting *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962)). "The failure to actually discover the fraud does not toll the statute of limitations if it is inconsistent with reasonable diligence." *Id.*; accord *Blegen v. Monarch Life Ins. Co.*, 365 N.W.2d 356, 357-58 (Minn. Ct. App. 1985). Plaintiffs "carry the burden of proving that they did not discover the facts constituting fraud within six years before commencement of the action." *Veldhuizen*, 839 F. Supp. 674. "They must also show that they could not have discovered the fraud through the exercise of reasonable diligence." *Id*.

Veal did not respond to Mentor's specific arguments regarding her fraud and misrepresentation claims. And, as discussed above, Veal did not file her complaint within six years after learning of a connection between ObTape and her injuries. She knew or had enough information to know of a connection between ObTape and at least some of her injuries by the time her doctor diagnosed her with a mesh erosion and asked her to consider two alternative options for treating her symptoms. A reasonable person in that situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. Veal

pointed to no evidence that she exercised reasonable diligence to investigate her potential claims even though she knew (or had enough information to know) there was a connection between her discharge symptoms and the ObTape.

Veal does contend that she exercised reasonable diligence to investigate her claims after she suffered a more serious erosion in 2007, more than eleven months after her first erosion diagnosis.   Veal did not point the Court to any Minnesota authority suggesting that a person who suffers a minor or moderate injury connected to a product has no obligation to investigate the connection until her symptoms worsen nearly a year later.   Again, Veal knew in July 2006 that she had an erosion and that she needed treatment for it, either with estrogen cream or with removal of the mesh.   There is no evidence of any action Veal took at that time—no evidence that she followed up with a doctor, sought medical records, or otherwise attempted to investigate the connection between her injury and the ObTape.   Veal also did not point to evidence that she could not have discovered enough facts to support her fraud and misrepresentation claims had she started investigating the connection she made (or had enough information to make) between ObTape and her injuries within a reasonable time after she discovered the connection. For these reasons, the Court finds that Veal's fraud and misrepresentation claims are time-barred.

11

CONCLUSION

For the reasons set forth above, Veal's claims are all time-barred under Minnesota law. Mentor's Motion for Summary Judgment (ECF No. 47 in 4:13-cv-238) is therefore granted.

IT IS SO ORDERED, this 9th day of September, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA